922 F.2d 837
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
THREE MALE JUVENILE DELINQUENTS, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
THREE MALE JUVENILE DELINQUENTS, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
THREE MALE JUVENILE DELINQUENTS, Defendants-Appellants.
 Nos. 89-5467, 89-5468 and 89-5496.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 5, 1990.
Decided Dec. 19, 1990.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Bryson City. Richard L. Voorhees, District Judge. (CR-89-82-B)
 Phillip Gregory Kelley, Ball, Kelley & Arrowood, P.A., Asheville, N.C.; Robert L. Inge, Robbinsville, N.C. (Argued), for appellants; Zeyland G. McKinney, Jr., Robbinsville, N.C., on brief.
 Thomas Richard Ascik, Assistant United States Attorney, Asheville, N.C. (Argued), for appellee; Thomas J. Ashcraft, United States Attorney, Asheville, N.C., on brief.
 W.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and WILLIAM M. NICKERSON, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Defendants were adjudicated delinquent after their conviction of sexual offenses against a minor. On appeal, they contend the district court erred in admitting incriminating statements of two of them and in admitting certificates establishing their membership in the Eastern Band of the Cherokee Indian Tribe. We affirm.
 
 
 2
 * In November 1987, three male juveniles (hereinafter A, B, and C) allegedly forcibly raped and sexually assaulted an Indian girl, age 11 at the time of the incident.[1] At the time of the incident, A was age 14, B was age 12, and C was age 12. The incident occurred at C's house, located on the Cherokee Indian Reservation within the Western District of North Carolina. The victim testified at trial that, after visiting C at his house on that November afternoon, she tried to leave, but had been forcibly detained by the three defendants, then raped and sexually assaulted. Initially, the victim did not tell anyone of the incident, but later reported the crime to Federal Bureau of Investigation Special Agent Miller, Juvenile Intake Counselor Craig White, and Tribal Policewoman Regina Rosario.
 
 
 3
 Agent Miller interviewed both A and B. After being read their rights, both A and B admitted that they had sexually assaulted the victim. Thereafter, the government charged the three defendants with sexual offenses by Bill of Information. The trial court heard two motions to suppress the pretrial incriminating statements of A and B, but denied both. Also, during the course of trial, defendants unsuccessfully objected to the introduction of tribal enrollment certificates which established their Indian heritage.
 
 
 4
 After a bench trial, the district court found the three defendants delinquent on one count of aggravated sexual abuse, two counts of aiding and abetting aggravated sexual abuse, and one count of abusive sexual contact. It sentenced A and B to four years official detention and C to official detention until his twentieth birthday.
 
 
 5
 On appeal, defendants advance two contentions. First, they claim that their confessions were not given voluntarily and that they did not knowingly and intelligently waive their right to remain silent. Second, they claim that the admission into evidence of the tribal enrollment certificates, which established their Indian heritage and thus provided the government with jurisdiction to prosecute them, constituted hearsay evidence. Neither contention possesses merit.
 
 II
 
 6
 The trial court held separate suppression hearings for A and B, where each advanced similar arguments for excluding their testimony. Each claimed that they would not have said anything to Agent Miller had not Craig White, Juvenile Court Intake Officer at the Cherokee Reservation, told them that the case would not go to court and that they need not fear talking to Miller. Each also claimed that, during the interview, Agent Miller drew his revolver in a threatening manner, laying it to rest on the table. A's mother, who attended the interview of her son, testified to the same. A also testified that he explained to Agent Miller that he did not want to talk to him, but that Miller told him that he "had to talk to him and he had to tell him everything he had told Craig White." Finally, B suggests that because of his youth, he had the right to have a "competent" adult present to assist him. B's grandmother attended the interview, but she testified that she spoke little English and did not fully understand the implications of the statements made by B or the rights he possessed under the law.
 
 
 7
 In contrast to defendants' claims, ample evidence exists suggesting the validity of the confessions. B admitted during his hearing that Miller had advised him of his rights. Also, B's grandmother testified that she did not remember Craig White extending any immunity to B and defense counsel did not question her concerning the alleged gun incident.[2] Agent Miller testified at A's hearing that he did not remove his revolver during either interview and that he did not threaten or coerce B. Miller also testified that he had properly advised A of his rights, and the government presented the advice-of-rights form which both A and his mother had signed.
 
 
 8
 The admissibility of evidence, of course, lies within the sole province of the trial judge. Wells v. Murray, 831 F.2d 468, 476 (4th Cir.1987). Consequently, absent a grave abuse of discretion, we will not disturb evidentiary rulings. United States v. Jenkins, 525 F.2d 819, 824 (6th Cir.1975). Moreover, insofar as there is a dispute of fact, we review the evidence in the light most favorable to the government. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Guided by these principles, we conclude that the trial court did not abuse its discretion in admitting the confessions. Likewise, B's contention concerning his youth falls on barren soil. Though reviewing courts must scrutinize carefully confessions made by juveniles, we have held in Miller v. Maryland, 577 F.2d 1158 (4th Cir.1978), that " '[y]outh by itself is not a ground for holding a confession inadmissible.' " Id. at 1159 (quoting Williams v. Peyton, 404 F.2d 528, 530 (4th Cir.1968)). Moreover, a juvenile does not have a right to have a family member or friend present with him at a police interrogation. See Miller, 577 F.2d at 1159.
 
 III
 
 9
 Title 18 U.S.C Secs. 2 and 1153 establish the jurisdictional predicates for the prosecution of an Indian in United States District Court. Under Sec. 1153, the government must establish that the defendants are Indian. At trial, the United States introduced three tribal enrollment certificates showing that the three juvenile defendants were members of the Eastern Band of the Cherokee Indian Tribe. The certificates, on official letterhead stationery of the Eastern Band of Cherokee Indians, showed that each defendant possessed approximately "one-half degree" Eastern Cherokee blood--a sufficient showing for this statutory purpose. The seal of Pamela Ensley, notary public, Jackson County, North Carolina, appeared on each certificate. A legal-sized certificate by Mildred Queen, Enrollment Officer for the Eastern Band of the Cherokee Indian Tribe, accompanied the three letter-sized certificates and certified that "the foregoing" were "a true, complete, and accurate copy" of the tribal roll. Queen's certificate, which had been folded over the other three certificates, also bore the seal of Pamela Ensley. Ensley's seal certified that Queen is the official Enrollment Officer of the Eastern Band of the Cherokee Indian Tribe.
 
 
 10
 The parties do not dispute that the incident occurred on Indian territory. Nor do they dispute that they are Indians, as described in the enrollment certificates. They simply contend that the trial court committed reversible error in admitting the certificates into evidence because they were barred by Rule 802 of the Federal Rules of Evidence as hearsay, and not otherwise admissible under any of the exceptions to the hearsay rule. We disagree, and the judgment of the trial court is affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Because of the age of the victim and the defendants, their names have been omitted
 
 
 [2]
 Only two witnesses testified at B's suppression hearing--B himself and his grandmother. B never called Craig White or Agent Miller to the stand during the hearing. White, however, testified at trial that he did not offer any immunity to B. Also, at trial defense counsel did not ask White about the alleged gun incident